| 81 | 519 |
| 82 | 320 |
| 81 | 519 |
| 89 | 471 |

## HAMMOND PACKING COMPANY *v.* STATE.

Opinion delivered January 14, 1907.

1. ANTI-TRUST ACT—NATURE OF PROCEEDING TO RECOVER PENALTY.—The penalty denounced by the anti-trust act of 1905 against those who violate its provisions is recoverable in a civil action, and not in a criminal proceeding within article 2, section 8 of the Constitution, providing, with certain exceptions, that "no person shall be held to answer a criminal charge unless on presentment or indictment of a grand jury." (Page 536.)

2. SUBPOENA DUCES TECUM—VALIDITY.—Where an order for *subpoena duces tecum* practically calls for all books, papers and documents of a large business, and in addition requires the production of certain witnesses for oral examination, the validity of the order as to production of the books and papers, if it be invalid as being un-

reasonable, will not justify disobedience of the writ as to the appearance of the witnesses for the purpose of testifying. (Page 538.)

3. ANTI-TRUST ACT—POWER OF STATE OVER CORPORATIONS.—The State, in a proper action, may require of either a foreign or domestic corporation doing business under authority of its laws the production of books, papers and documents, in order that it may be determined whether such corporation is violating the anti-trust act, provided the order for their production is reasonable in its terms. (Page 540.)

4. SAME—REQUIREMENT AS TO PRODUCTION OF TESTIMONY.—The provisions of the anti-trust act (sections 8 and 9) that the State's attorneys may in a proceeding under the act apply for an order to take the testimony of persons, and that the defendant's attorneys, officers or employees may be notified to request the officers, agents or employees of defendant to appear and testify, do not contemplate anything more than that the defendant shall make an honest effort to produce the testimony called for. (Page 540.)

5. SAME—PRODUCTION OF TESTIMONY—DUE PROCESS.—Section 9 of the anti-trust act, providing that when a defendant, proceeded against under its terms, is notified to produce certain witnesses to testify as required by section 8, and such witnesses fail to appear and testify, the defendant's answer or other pleading shall be stricken out, and judgment by default entered against defendant, relates to a matter of procedure and practice in procuring testimony in trials, and does not deprive the defendant of due process within the Fourteenth Amendment. (Page 541.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

This was an action instituted in the name of the State of Arkansas upon the relation of the Attorney General against the Hammond Packing Company under the anti-trust act, charging the defendant with being a member of a pool, trust, combination or conspiracy to fix and maintain prices in violation of the terms of the act, and seeking to recover a money penalty and to forfeit the right of the defendant to do business in the State.

The complaint alleged that defendant is a foreign corporation, and that on certain dates mentioned, while engaged in business in Arkansas, it created, entered into and became, and was then, a member of and a party to a pool, trust, agreement, combination, confederation and understanding, with certain other corporations, partnerships, individuals, persons and associations of persons, engaged in lines of

business similar in most respects and objects to that conducted by the said defendant, amongst whom were Swift & Co., the Cudahy Packing Company, the Armour Packing Company, Nelson Morris & Co. and Armour & Co., to regulate and fix the selling price of certain articles of manufacture, merchandise, commodity and convenience, towit, the commercial products of slaughtered live stock, and to maintain such price when so regulated and fixed, contrary to the form of the statute in such cases made and provided, and in violation thereof.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Wherefore plaintiff alleges that said defendant, by transacting and conducting in this State the business of selling the products, articles and commodities aforementioned in this State, while a member of and a party to such pool, trust, combination, and understanding, as aforesaid, and by being a member of and a party to such pool, trust, combination and understanding as aforesaid, while transacting such business in this State, as aforesaid, violated the provisions of said act, and thereby forfeited its right and privilege thereafter to do business in this State; and that by committing such prohibited acts upon the 26th, 27th, 28th, 29th, 30th and 31st days of March, 1905, the said defendant became liable to the plaintiff in the sum of thirty thousand dollars, and an action accrued to the plaintiff to recover said sum according to the provisions of said act.

"The premises considered, plaintiff prays judgment that the right and privilege of said defendant to do business in this State be declared forfeited, and that plaintiff have and recover of said defendant the sum of thirty thousand dollars, and all her costs in this suit expended, together with all the expenses of the Attorney General in prosecuting same, as provided in said act, and for all other and proper relief."

The defendant interposed a demurrer on the following grounds:

"1. Because the allegations of the said paragraph do not constitute a cause of action against the defendant.

"2. Because it does not appear from the allegations of the said paragraph that the defendant had created, entered into, or become a member of, or a party to, any pool, trust, agreement, combination, confederation, or understanding with any corpora-

tion, partnership, individual, or association of persons in the State of Arkansas, or to regulate or fix the price at which any article of manufacture, merchandise, commodity, or convenience should be sold within the State of Arkansas.

"3.  Because the statute upon which the action is brought attempts to impose a penalty for acts done outside the State of Arkansas, and is unconstitutional and void under the Fourteenth Amendment to the Constitution of the United States, and under section 21, article 2, of the Constitution of Arkansas."

With its demurrer the defendant filed an answer specifically denying the allegations of the complaint.

The court overruled a motion by defendant to make the allegations of the complaint more definite and certain so as to show when the pool, trust, agreement, confederation, combination or understanding charged in the complaint was made, where it was made, what its terms and conditions were, and in what respect it constituted a pool, trust, agreement, combination, confederation or understanding in violation of the statute, and to show the article or articles embraced within the terms of the pool, trust, combination or confederation.

On September 5, 1906, plaintiff filed its motion for the appointment of a commissioner to take depositions in Chicago, and for an order upon the defendant to produce before him S. A. McLain, Jr., and fifteen other designated persons alleged to be officers and employees of the defendant residing in Chicago, Illinois, and all books, papers and documents in the possession or under the control of said persons, or any of them, relating to the issues in the case.

Defendant filed its motion for a rule on plaintiff to set out specifically what it expected to prove by each witness whose production was asked for, and also to set out specifically the particular description of any books it desired to be produced, with the name of the witness who was expected to produce it, and that it be required specifically to state wherein any of said books were material to the issues in this case. The Attorney General, on behalf of the plaintiff, filed an affidavit stating that he did not know just what could be proved by any one of the witnesses asked for, nor exactly what information was contained in any book or paper which was material in

the case. The court overruled this motion, and to its action in so doing the defendant excepted.

On September 10 the court entered an order appointing Lyle D. Taylor commissioner to take the depositions of the witnesses named in the motion of plaintiff in Chicago. The order directed the production of any books, papers, and documents in the possession or under the control of either of said persons relating to the merits of said cause, or to any defense therein, and directing and impowering said commissioner to examine orally under oath each and all of said persons or such thereof as may be brought before him for examination. Provided, that at such examination the witnesses and books aforesaid shall not be required to be produced at any one time in such numbers as to interfere with the operation of the defendant's business. It is further ordered that said commissioner shall, immediately upon the receipt of his commission above granted, issue a notice in writing, directed to the president or some officer or agent of the defendant corporation, notifying such president, officer or agent that the testimony of the person above named is desired, and requesting such president, officer or agent to have such persons, together with such books, papers and documents as above referred to, at the office of the said Lyle D. Taylor, 1301 Ashland Block, 59 Clark Street, in the city of Chicago, Illinois, on the 20th day of September, 1906, at 10 o'clock, A. M., then and there to testify, and to have such persons to attend at such place from day to day or from time to time, if adjournment be had, until the taking of their testimony herein be completed, and at such times to produce said books, papers and documents whenever demanded. And it is further ordered that counsel for the respective parties, or either of them, be, and they are, hereby authorized and allowed to attend before said commissioner upon the execution of the commission hereinbefore granted, and to orally examine and cross-examine said witnesses, or either of them; such oral examination and cross-examination to be reduced to writing by type by the commissioner, signed by said witnesses, attested in due form of law, and annexed to and returned with the commission hereinbefore ordered to the clerk of the Pulaski Circuit Court."

On October 8, the plaintiff filed its motion, reciting its motion for the appointment of a commissioner, the order appointing the commissioner, the service of notice by the commissioner for the production of the witnesses, and the books, papers and documents called for in the order appointing him, and the fact that at the time and place fixed the defendant refused to produce the witnesses called for, or any of the books, papers or documents, and thereupon asked the court to strike out all answers, demurrers, motions, replies or other pleadings filed in the cause, and to render a judgment in favor of the plaintiff by default.

The plaintiff, in support of its motion to strike the pleadings of the defendant, offered in evidence its motion to appoint a commissioner, the affidavit of the Attorney Gereral in support thereof, the order of the court appointing the commissioner, and the commission issued, with the return of the commissioner thereon.

The defendant, in support of its response, offered in evidence its motion to make the complaint more definite and certain, and the order of the court thereon, and its motion to require the depositions taken out of Pulaski County to be taken upon interrogatories and the order of the court overruling said motion, and its motion to require the plaintiff to make its motion for the appointment of a commissioner more definite and certain, so as to show the names of the persons to be examined, what the plaintiff expected to prove by each of them, the books, papers and documents that it desired produced, and what they contained that was material to the issues of the case, with the court's order overruling the same.

In the return of Lyle D. Taylor, commissioner, which was introduced in evidence by plaintiff upon the hearing of the motion to strike the pleadings and render judgment by default, is a letter of the defendant stating its reasons for its failure to comply with the order, which is as follows:

"*Lyle D. Taylor, Commissioner, Ashland Block, City:*

"DEAR SIR—Your request upon this company to produce certain of its officers and employees, with books, papers and documents, before you, to be used as evidence on the part of the plaintiff in the case of the State of Arkansas against this company, has received the most respectful consideration. The company cannot concede the right of the honorable court whose com-

mission you bear, to make the order under which you act, or your right to make the request referred to. On the contrary, it is of opinion that the request calls upon it to surrender rights in which it is protected by the Constitution of the United States and of the State of Arkansas, that are too valuable to be surrendered.

"With all respect for yourself and the honorable court, the company must decline to comply with the request.

"Very respectfully, etc.,

"Chicago, October 2, 1906."

Defendant filed a response to the motion, setting up that the statute was in various respects unconstitutional.

The following stipulation was filed:

"It is stipulated by and between the parties to this suit, the State of Arkansas represented by her Attorney General, and the defendant by its attorneys, Rose Hemingway, Cantrell & Loughborough, that if the defendant fails to produce the witnesses, and books, papers and documents called for in the order heretofore made by the honorable Pulaski Circuit Court, and if the plaintiff shall file a motion in pursuance of the statute of the State of Arkansas to strike the answer and other pleadings of the defendant from the files and for a judgment by default, and if said motion is sustained and a judgment by default rendered for a money penalty in favor of the plaintiff against the defendant, in such event the judgment shall be entered on the first count of the complaint and for the sum of ten thousand dollars ($10,-000.00) ; that the defendant may prosecute an appeal to the Supreme Court of Arkansas, which is to be done with all reasonable speed and expedition, and in case of an adverse decision by the Supreme Court of Arkansas it may further prosecute with all reasonable speed and expedition its writ of error to the Supreme Court of the United States; and that the enforcement of the judgment shall be suspended until the final decision of the cause in the court of last resort."

The motion to strike out the pleadings of defendant, and the response thereto by defendant, were heard, the motion was sustained, the pleadings were stricken from the files, and a judgment by default was rendered for the sum of ten thousand dollars.

Thereupon the defendant filed its motion to set aside the judgment by default, and for a new trial, which motions raised various objections to the legality of the court's action in striking out its answer, and in entering judgment against it by default.

The court overruled the motions, to which action the defendant at the time saved its exceptions, and it filed its bill of exceptions and appealed.

Sections eight and nine of the Anti-trust Act (Acts 1905, p. 1.) are as follows:

"Section 8.   Whenever any proceeding shall be commenced in any court of competent jurisdiction in this State by the Attorney General and Prosecuting Attorney against any corporation or corporations, individual or individuals, or association of individuals, or joint stock association or copartnership under the law against the formation and maintenance of pools, trusts of any kind, monopolies or confederations, combinations or organizations in restraint of trade, to dissolve the same or to restrain their formation or maintenance in this State, or to recover the penalties in this act provided, then and in such case, if the Attorney General or Prosecuting Attorney desires to take the testimony of any officer, director, agent, or employee of any corporation, or joint stock association proceeded against, or, in case of copartnership, any of the members of said partnership, or any employee thereof, in any court in which said action may be pending, and the individual or individuals whose testimony is desired are without the jurisdiction of this State, or reside without the State of Arkansas, then in such case the Attorney General or Prosecuting Attorney may file in said court in term time, or with the judge thereof in vacation, a statement· in writing, setting forth the name or names of the persons or individuals whose testimony he desires to take, and the time when and the place where he desires said persons to appear; and thereupon the court or judge thereof shall make an order for the taking of said testimony of such person or persons and for the production of any books, papers and documents in his possession or under his control relating to the merits of any suit, or to any evidence therein, shall appoint a commissioner for that purpose, who shall be an officer authorized by law to take depositions in this State,

and said commissioner shall issue immediately a notice, in writing, directed to the attorney or attorneys of record in said case, or agent, or officer, or other employee, that the testimony of the person named in the application of the Attorney General or the Prosecuting Attorney is desired, and requesting said attorney, or attorneys of record, or said officer, agent or employee to whom said notice is delivered, and upon whom the same is served, to have said officer, agent, employee, representative of said copartnership, or agent thereof, whose evidence it is desired to take, together with such books, papers and documents, at the place named in the application of the Attorney General, or the Prosecuting Attorney, and at the time fixed in the application, then and there to testify; Provided, however, That such application shall always allow in affixing said time the same number of days travel to reach the designated place in Arkansas that would now be allowed by law in case of taking depositions: Provided, also, In addition to the above named time, six days shall be allowed for the attorney or attorneys of record, or the agent, officer or employee on whom notice is served, to notify the person or persons whose testimony is to be taken. Service of said notice as returned in writing may be made by any one authorized by law to serve a subpoena.

"Section 9. Whenever the persons mentioned in the preceding sections shall be notified, as above provided, to request any officer, agent, director or employee to attend before any court, or before any person authorized to take the testimony in said proceedings, and the person or persons whose testimony is requested, as above provided, shall fail to appear and testify and produce any books, papers and documents they may be ordered to produce by the court, or the other officer authorized to take such evidence, then it will be the duty of the court, upon motion of the Attorney General or Prosecuting Attorney, to strike out the answer, motion, reply, demurrer or other pleading then or thereafter filed in said action or proceeding by the said corporation, joint stock association or copartnership, whose officer, agent, director or employee has neglected or failed to attend and testify and produce all books, papers and documents he or they shall have been ordered to produce in said action by the court or person authorized to take said testimony, and said court shall pro-

ceed to render judgment by default against said corporation, joint stock association or copartnership. And it is further provided that in case any officer, agent, employee, director or representative of any corporation, joint stock association or copartnership in such proceeding, as hereinbefore mentioned, who shall reside or be found in this State, shall be subpoenaed to appear and testify or to produce books, papers and documents, and shall fail, neglect or refuse to do so, then the answer, motion, demurrer or other pleading then and thereafter filed by said corporation, joint stock association or copartnership in any such proceeding, shall, on motion of the Attorney General or Prosecuting Attorney, be stricken out and judgment in said cause rendered against said corporation, joint stock association or copartnership."

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The provision of the statute authorizing the court to make an order for the production of books and papers is unconstitutional: (1) Because it deprives defendant of the right to have the witnesses against it produced in person and to be confronted by them in the trial. Art. 2, § 10, Const. Ark.; 5 Amendment U. S. Const.; art. 2, § 14, Const. (Ark.), 1836; Rev. Stat. 246; 6 Ark. 187; Cooley's Const. Lim. 374. (2) It subjects the defendant to unreasonable search and seizure of its books, papers and documents. 4th and 14th Amendments Const. U. S.; art. 2, § 15, Const. Ark. The statute, being penal, should be strictly construed, and the full protection of the Constitution extended to the defendant. 116 U. S. 617; 148 U. S. 325; 154 U. S. 479; 201 U. S. 43, 76; 132 Pa. St. 403; Cooley's Const. Lim. 370, n. 2; *Id.* 372; 109 Fed. 549; 3 Cranch, C. C. 646; 4 Mo. App. 494; 72 Mo. 97; 75 S. W. 737; 71 Pac. 602; 5 Cush. 369; 39 Ind. 519; 2 Elliott on Ev. § § 1391, 1396, 1412; 150 Ill. 408; 93 Fed. 36; 20 Hun, 517; 50 N. E. 1032; 11 Exch. 543; 20 Atl. 977; 1 Pom. Eq. Jur. § 201; Story, Eq. Jur. § § 1490, 1495; 2 Daniell, Ch. Pr. § 1557; Story's Eq. Pl. § § 521, 575, 576; 1 Greenleaf, Ev. 451; 5 Best & S. 873; 2 Gray, 558; 64 N. Y. 120; 5 Ark. 70; 15 Ark. 29. Every order for the production of papers should rest upon the judgment of a court that the papers called for are material to the issues; and every such order calling

for the production of private papers and their exposure to strangers, without a preliminary showing of materiality and without a specific description which shall identify the material and leave untouched the immaterial, is a violation of the principles of civil liberty. 72 Mo. 83; Kirby's Digest, § 3111; 66 Ark. 229; 73 Vt. 212; 40 Ill. App. 428; 146 Pa. St. 255; Cooley's Const. Lim. 368; 150 Ill. 408; 50 N. E. 132. The act places a harsh and unreasonable burden upon the defendant as a condition to making its defense, placing a price upon the administration of justice, in violation of the Constitution. Art. 2, § 13. (3) The section of the act authorizing the court to compel a production of witnesses and papers requires the defendant, in a penal or criminal action, to give evidence against itself, and the order based upon it violates the 5th and 14th amendments to the United States Constitution and the State Constitution, art. 2, § 8. Cooley's Const. Lim. 364, and authorities *supra;* 3 Wigmore on Ev. § 2259; 18 S. W. 1125. (4) It denies to the defendant the equal protection of the laws. 165 U. S. 150; 127 U. S. 209; 52 Ark. 150; 10 Pet. 596; 7 Wall. 159; 17 Fed. 41. (5) It deprives the defendant of its property without due process of law. *Supra.*

2. The statute which provides that the court shall strike the defendant's pleadings from the files and render judgment against it by default is unconstitutional, and a judgment so rendered constitutes a taking of property without due process of law, and a denial to it of the equal protection of the law. Art. 2, § § 3, 8 and 21, State Const.; 14th Amendment; 30 S. E. (Ga.) 878; 125 Fed. 468; 172 U. S. 557; 155 U. S. 689; 167 U. S. 444; 3 Summ. 601; 93 U. S. 274; 18 Wall. 330; 17 Wall. 437; 182 U. S. 427; Cooley's Const. Lim. (6 Ed.), 452; 61 Fed. 718; 53 Fed. 901; 58 Ala. 594; 55 Minn. 473; 11 Wall. 259; 52 Pac. 122; 51 Pac. 696; 55 Pac. 163; 61 Pac. 987; 71 Pac. 407; 37 S. E. 678; 23 Gratt. 409; 28 Gratt. 16; 42 La. Ann. 92; 94 Fed. 1017; 55 Cal. 633; 88 Fed. 713; 186 U. S. 365; 62 N. E. 488; 85 N. Y. 437; 21 W. Va. 347; 122 Mo. 161; 45 S. C. 464.

3. The allegations of the complaint do not disclose a cause of action against the defendant. (1) The anti-trust act is essentially a criminal statute. § § 1, 2, art.; art. 2, § 8, Const. 1874; Kirby's Digest, § 1546, *et seq.;* 70 Md. 191; 146 U. S.

657; 47 Ark. 243; 6 Ark. 187; 41 Ark. 403; 11 Ark. 500; 43 N. W. 845; 2 Doug. (Mich.) 334; 38 Ind. 60. The anti-trust acts of Missouri and Texas allowing proceedings for their violation upon information of the Attorney General or Prosecuting Attorney are based upon constitutional provisions different from ours. Compare art. 2, § 12, Const. Mo., 1875; art. 1, § 10, Const. Tex., 1876. And the anti-trust acts of those States do not make the violation of their terms an offense, or constitute them crimes, as does ours. 2 Rev. Stat. Mo., § § 8968-8975; Sayle's Texas Civ. Stat. Tit. 108, pp. 1878, 1879; Kirby's Digest, § § 1976-1982. The first section of the act provides that persons violating its terms "shall be deemed and adjudged guilty of a conspiracy to defraud." Every combination, either to injure individuals or to do acts prejudicial to the community, was indictable at common law. 2 Bishop, Crim. Law, § § 174-5-6; 2 Eddy on Combinations, § § 43-4-5; 2 Wharton, Crim. Law, (10 Ed.), § § 1369, 1371, 1851; 20 Ark. 216; 68 Pa. St. 173; 2 Whart. Cr. Law, § 178; 9 Am. Dec. 534; 1 Devereux (N. C.) 357; 4 Met. 111; 84 Va. 927; 3 Whart. Cr. Law, (6 Ed.), § 2322; 12 Minn. 164; 23 N. J. Law, 33; 15 N. H. 396; 156 U. S. 1; 175 U. S. 211; 196 U. S. 375. Therefore, when the act forbade combinations to fix or maintain prices, and declared its violation to be a conspiracy to defraud, it but defined a common law offense, and persons violating it can only be proceeded against by indictment. 6 Ark. 190, and authorities *supra;* 26 U. S. 216; 2 Eddy on Combinations, 914 *et seq.* (2) If the act alleged in the complaint constitutes a violation of the statute, the statute is nevertheless unconstitutional because it provides penalties for acts and transactions occuring without the State, and discriminates between persons in its treatment of acts done by them in the State. This question was not urged in the Hartford case, 76 Ark. 303, and the decision of the majority of the court was directed to the power of the State to oust a foreign corporation for violating the act.

The gist of the offense defined by the act is an unlawful confederation, and not doing business in this State. At the common law the unlawful confederation or agreement was the gist of the offense of conspiracy, and such is the common law as it has been adopted by the various States of the Union. 1 Leach,

274; 17 Fed. 145; 44 Fed. 898; 3 Am. Dec. 58; 51 *Id.* 75, note; 12 Minn. 164; 15 N. H. 396; 9 Am. Dec. 556; 152 U. S. 539; 108 U. S. 204; 10 Cent. Dig. 1130.

The act does not prescribe the terms upon which foreign corporations may do business in the State, nor the punishment of such corporations for doing business without authority.

The offense defined by the act is in fact, as well as in name, "a conspiracy to defraud;" and, when considered in connection with the common law with respect to conspiracies in restraint of trade and the Federal statutes upon the same subject, the conclusion must be reached that it was intended to punish confederations, and not acts prejudicial to trade.

The offense is complete when the confederation has been formed. The only effect of acts done to accomplish its purpose is to aggravate, or renew, the offense. 4 Wend. 229; 21 Am. Dec. 122; 85 Pa. St. 482; 152 U. S. 539; Arch. Crim. Pr. 6; 4 East, 164; 6 Biss. 259; 52 Fed. 275; 27 Fed. Cas. No. 15,896. If the act can not be so construed as to make the offense the same whether committed by a foreign or a domestic corporation, or by an individual residing and doing business within the State, or residing or doing business without the State, then it it unequal in its application, deprives the appellant of the equal protection of the law, and therefore is unconstitutional. Cases *supra.*

A corporation is a person within the meaning of the State and Federal constitutions, and a foreign corporation, when it has complied with the terms of the statute prescribing the terms upon which it may do business in this State, is entitled to demand the equal protection of the laws. Kirby's Digest, § 828; 118 U. S. 394; 142 U. S. 386; 164 U. S. 578; 127 U. S. 209; 199 U. S. 409; Cooley's Const. Lim. 209-14.

The punishment under the act can not exceed forfeiture of license to do business within the State. Conceding to the State that, through comity, it may authorize a foreign corporation to transact business within its borders, and may thereafter at will withdraw that right, and exclude the corporation, yet, undoubtedly, it is without authority to inflict a money penalty for acts done without its jurisdiction. 177 U. S. 28; 197 U. S. 115. See, also, 182 U. S. 452; 199 U. S. 409; 200 U. S. 48.

*Robert L. Rogers,* Attorney General, *Lewis Rhoton,* Prosecuting Attorney, *James H. Stevenson, F. Guy Fulk, W. M. Lewis* and *W. L. Terry,* for appellee.

1.   A corporation is subject to regulation by the alteration, amendment or repeal of its charter, under the power reserved to itself by the State.   Art. 12, § 6, Const.; 58 Ark. 407, 427, 435. Having no absolute rights outside the State of their creation, foreign corporations accept license to transact business within this State subject to such burdens, restrictions and limitations as the State may see fit by law to impose upon them.   Art. 12, § 11, Const.   And, whether the conditions imposed are reasonable or not. so long as they are within constitutional limitations, they are absolutely within the discretion of the Legislature.   19 Cyc. 1251-2; 54 Ark. 101; 69 Ark. 521.

Whatever restrictions, conditions and burdens the Legislature might lawfully have laid upon a corporation in the original grant of power to it may be imposed upon it by way of amendment; provided such restrictions, conditions and burdens be prospective in their operation, and provided further that they do not impair the contracts of the company already made or rights which have become vested under authority, and in the valid exercise, of its charter.   99 U. S. 700 and cases cited; 110 U. S. 347.

Appellant by coming into this State agreed to abide by the laws of the State, including such statutes restricting its powers as the Legislature might from time to time enact; and by continuing in the State after the act of 1905 was passed it agreed to conform thereto.   54 Ark. 101; 125 Fed. 502; 124 Fed. 262; 138 Cal. 738; 106 U. S. 350.; 177 U. S. 29.   Compliance with all the requirements of the act of 1905 is required of foreign corporations as a condition of doing business in this State. 76 Ark. 403, 412.   See, also, 208 Ill. 562.

Statutes are sustained as valid which:

(1)   Require foreign corporations to submit to examination under the Anti-Trust Law.   125 Fed. 502; 199 U. S. 401.

(2)   Deny to foreign corporations, not complying with certain requirements, the right to use the courts of the State.   138 Cal. 738.

If appellant's propositions were true (which appellee does not concede) that (1) this is a criminal charge and appellant can

only be proceeded against by indictment or presentment, (2) that it can not be compelled to produce evidence against itself therein, and (3) that it has been deprived of its property without due process of law, still appellant does not come within the class of parties who are made the beneficiaries of the guaranties of the Bill of Rights which appellant seeks to invoke. The words "people," "men," "person," "people of this State," "citizen or class of citizens" as used in art. 2, § § 1, 2, 8, 13, 15, 16, 18 and 21, Const. 1874, occurring in close juxtaposition and in reference to the same general purposes, when given the ordinary and usual meaning, must necessarily be taken to refer to natural persons and citizens, and not to corporations. A review of the Federal Constitution shows that its guaranties are intended primarily for the individual. Art. 4, § 2; amendments Nos. 2, 4 and 5; amendment No. 14, § 1. Although the United States Supreme Court has held that corporations are persons within the meaning of the provisions guarantying due process of law and equal protection of the law, there is authority sustaining appellee's contention here. 17 L. R. A. 856. And it has been held that a corporation is not included in the term "the people," as used in the 4th Amendment relating to searches and seizures. 201 U. S. 43, 73, 78. See, also, 8 Wall, 168; 19 Cyc. 1226; 125 U. S. 181; 5 Current Law, 1471; 74 N. E. 467; *Id.* 809.

2. The act is not unconstitutional as providing for an unlawful search and seizure; moreover the record discloses no facts upon which to base the contention that the order of examination subjected appellant to such unlawful search and seizure.

The order of examination, wherein Lyle D. Taylor was commissioned to act for the court for the purpose of securing the testimony of the witnesses named therein, was necessarily general in its terms; but he was given discretion to continue the taking of depositions from time to time, as might be neccessary, and to order the production of books, papers and documents "whenever demanded," and it was further provided in the order that the witnesses and books should not be required to be produced at any one time in such numbers as to interfere with the operation of defendant's business. At the first attempt of the commissioner to enter upon the execution of the commission, when he called upon appellant to produce witnesses, naming one speci-

fically, for examination, and without requesting that he produce any books, papers or documents, appellant refused to produce the witness, and, further, refused to yield obedience to any part of the order of examination. If the commissioner had made an order which was too broad, the proper time to object was when appellant appeared in circuit court and made response to the attorney general's motion for default judgment.

Where one conceives that he is not compelled to submit to questions and demands which he has reason to believe will be asked or made, it is his duty to wait until such improper questions or demands are asked or made, and then assert his rights by refusing to answer or comply. 4 Abb. (N. C.) 241; *Id.* 252; 14 Daly, 308. The act does not deprive the circuit court of its discretion to grant or refuse the Attorney General's motion for an order for examination, nor with reference to entering a default judgment. 66 N. Y. Supp. 129. As opposed to the contention that the act is unconstitutional in providing for an unlawful search and seizure, see 142 Fed. 808; 201 U. S. 652, 664; 106 Mo. 670; 108 Mo. 666; 18 S. W. 894; 91 S. W. 1062; 17 L. R. A. 859; 66 Ark. 229; 13 Ark. 307; 161 U. S. 591; 199 U. S. 370.

3. The provisions of the act authorizing a judgment by default are not inimical to the "due process of law" provisions of the Constitution, and are valid. 2 N. Y. Civ. Proc. Rep. 72; 91 S. W. 1070; 96 U. S. 97; 94 U. S. 113; 97 U. S. 108; 18 How. 272; 111 U. S. 701; 4 Wheat. 244; 95 U. S. 714; 92 U. S. 480; *Id.* 90; *Id.* 280; 182 U. S. 436; 37 S. W. 513; 110 U. S. 516; 160 U. S. 389; 177 U. S. 230; 169 U. S. 586; 166 U. S. 138. It has been held: (*a*) That the proceedings under which property is subjected need not be strictly a judicial proceeding. 18 How. 272; 107 U. S. 265; 115 U. S. 330; 47 Ark. 296, 301. (*b*) That due process of law does not necessarily imply a proceeding according to the course of the common law. Cases *supra;* 110 U. S. 516. (*c*) That due process of law does not necessarily imply a trial by jury. 92 U. S. 90, *et seq.* See, also, 182 U. S. 186; 177 U. S. 238. The State has full control over the procedure in its own courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions

of the Federal Constitution.   9 Fed. Stat. Ann. 431; 175 U. S.
175; 137 U. S. 20; 166 U. S. 138; 194 U. S. 263; 8 Cyc. 823.
In the exercise of its inherent power, the court, in this State, if
an answer does not meet the requirements of the statute, may
render judgment by default, treating the case as if the defendant
had not appeared, though served.   Kirby's Digest, § § 6098, 6197.
See, also, *Id.* § § 6240-1; *Id.* 6154-6166.   For further authorities
supporting the validity of the provisions for entering judgment
by default, see 75 Miss. 862.   The judgment by "default" pro-
vided for in the act is not to be understood as meaning "default"
in its technical sense, but in the broader sense intended in code
provisions.   1 Black on Judgments, § 15; *Id.* § 80; 6 Col. 483;
6 Enc. Pl. & Pr. 59.   The provision for striking out the answer
and giving judgment by default upon failure to comply with the
order of examination is proper practice.   6 Enc. Pl. & Pr. 83; *Id.*
91-2; 5 Am. & Eng. of L. (1 Ed.), 496*a*; 20 Col. 628.   Such
statutes are highly remedial, and should be liberally construed.
55 N. Y. App. Div. 245.   See, also, 3 Fed. Stat. Ann. 2, 3; 8
*Id.* 264-5; 2 Rev. Stat. (Mo.), 1855 p. 1577, § 3; *Id.* § 4; 31 Mo.
435; 40 Mo. 166; 46 Mo. App. 351; 48 Mo. App. 510; 81 Mo.
App. 380; 114 Mo. App. 446; 14 How. 453; 15 Hun, 110; 15
Abb. Pr. (U. S.), 184; 34 N. H. 215; 5 Ind. 291; 80 Ind. 371;
111 Ind. 403; 88 Ind. 305; 26 Wis. 500; 105 N. W. 1067; 3 Ala.
295; 6 Ala. 438; 56 Ind. 394; 139 Mass. 98; 125 Mass. 572; 136
Mass. 291; 44 Ia. 394; 13 Tex. 394; 86 Pac. 1120; 93 Fed. 31;
24 Fed. 738; 109 Fed. 547; 10 Fed. 529; 1 Curt. 401; 30 S. E.
878; 26 S. E. 473; 174 Pa. So. 349; 80 Ill. 489; *Id.* 435; 78 Ill.
605; 71 Ill. 44; 99 Mass. 404; 1 Miles (Pa.), 256; 10 Phila. 609.

4.   The procedure in this case did not deny the appellant
the right to confront the witnesses against it, even if it was entitled
to such right, nor was it a violation of that right as secured by
art. 1, § 10, State Const.; and the 5th amendment to the Federal
Constitution does not apply.   29 Ark. 17; 33 Ark. 539; 40 Ark.
454; 37 Ark. 324; 60 Ark. 400; 47 Ark. 180; 9 Fed. Stat. Ann.
256.   The order of examination does not constitute an unreason-
able search and seizure.   Cases *supra.*   The statute is not invalid
as compelling a party to be a witness against himself in a criminal
case.   It does not deny to appellant the equal protection
of the law.   There is no classification provided in the act, but it

applies to all corporations, partnerships, individuals or other associations or persons. 165 U. S. 150; 2 N. Y. Civ. Proc. 72; 14 Abb Pr. 443. The order of examination does not deprive appellant of its property without due process of law.

5. The act is not a criminal statute, and this is not a criminal proceeding. 56 Ark. 166; Mansfield's Digest, § 5478; Kirby's Digest, § 6595; 63 Ark. 134; 55 Ark. 201; 58 Ark. 39; 69 Ark. 363; 32 Wis. 663; 28 Conn. 169; 16 Enc. Pl. & Pr. 231; *Id.* 235; *Id.* 237; 52 N. Y. Supp. 9; 4 Lans. 136; 14 Tel. 365; 12 Neb. 538; 85 Ky. 586; 84 N. C. 681; 2 Paine, 300; Fed. Cas. No. 13,341; 197 U. S. 115; 44 S. W. 936; 67 S. W. 1057.

6. The act defining the violations of the law which are charged in the complaint is constitutional. 76 Ark. 303. Contrary to appellant's contention, the judgment in this case not only shows that no judgment for ouster was entered, but it also shows that the lower court specially refrained from entering such a judgment, and held the question open until this court could pass upon the constitutionality of the act and the power of the circuit court to enforce its judgment for a money penalty. See, also, 46 Am. Dec. 100; 125 Fed. 502.

HILL, C. J. This is an action brought by the State of Arkansas on the relation of the Attorney General against the Hammond Packing Company, alleging that it was doing business in the State contrary to the Anti-trust Act of 1905. After answer a commission was issued to a commissioner in Chicago to take testimony. Upon a refusal to comply with the order of court requiring production of witnesses and documents, after notice, the answer was stricken out, and judgment rendered against the appellant as by default, and it appealed.

1. The nature of the "conspiracy to defraud" denounced by section one of the act of January 23, 1905, the "Anti-trust Act," is the first subject requiring attention. Appellant contends that the complaint, framed in the language of that section, does not constitute a cause of action because the acts therein complained of constitute a crime, and under art. 2, § 8, of the Constitution of Arkansas, "no person shall be held to answer a criminal charge unless on presentment or indictment of a grand jury" (with certain exceptions not pertinent to this issue).

The same contention was made in regard to the offense

described in the 1st section of the Anti-trust Act of 1899. Acts 1899, p. 50. The difference between section 1 of the act of 1899 and section 1 of this act is immaterial on this issue. The court, in construing the act of 1899 in *State* v. *Lancashire Fire Ins. Co.* 66. Ark. 466, ruled this point, it is true, *sub silentio,* against the contention of the appellant. That an attempted monopoly, an agreement to restrain the freedom of trade, was a criminal conspiracy at common law is undoubtedly true. This subject is fully discussed. and also the applicability of the law of criminal conspiracy to modern combinations in restraint of trade, in Eddy on Combinations, § § 335-336, and Beach on Monopolies, § § 77-78.

When the ingredients constituting the criminal conspiracy at common law and the ingredients constituting the "conspiracy to defraud" under anti-trust acts are examined, it is apparent that the offenses are not identical. The latter is doing business while a member of an illegal combination, while the former is a conspiracy to do an unlawful act or a conspiracy to do a lawful act in an unlawful manner. The remedies against the common-law conspiracy were indictment for the criminal conspiracy and an action on the case for damages by an aggrieved party or *quo warranto* by the State against an offending corporation. Eddy on Combinations, § § 338, 371. This action is entirely different, and is purely a statutory action to recover the penalties of the statute for doing business in the State contrary to its terms. These penalties are two-fold: one a money judgment for each day the offense continues, and the other as to corporations a forfeiture of charter if a domestic corporation and forfeiture of right in the State if a foreign corporation. Anti-trust Act, 1905, § § 2 and 3,

*Railway Company* v. *State,* 56 Ark. 166, is applicable here. It was therein demonstrated that a statutory penalty for a matter not a crime at common law and not made a crime by the statute was recoverable in a civil action, and was not a "criminal charge," within the meaning of sec. 8, art. 2, of the Constitution. The fact that there is a further penalty in case the offender is a corporation—that penalty being the civil death of the corporation if it is created by this State and its exile if created by another State— can not change the effect of the money penalty. It is just an added penalty where the offender is an artificial person, and falls

equally, to the extent of the State's power, on foreign and domestic corporations.

It is sought to distinguish the Hartford case (*Hartford Fire Insurance Co.* v. *State,* 76 Ark. 303), from this one on the ground that in the Hartford case only the ouster of a foreign insurance corporation was considered, while this case presents an appeal from a money judgment only. The matter of money judgment in the Hartford case was covered by an agreement of parties (see page 305), and the decision was limited to the facts presented, but it was expressly held that the corporation had subjected itself to the penalty of the act. That this judgment is not of ouster as well as for the money penalty is not a cause of complaint by. appellant, for it is liable to that penalty likewise if liable for the money penalty. Therefore the court treats the action as purely a statutory one for the recovery of a penalty named in the statute.

2. It is contended that sections 8 and 9 of the anti-trust act of 1905 subject defendants proceeded against under them to unreasonable search and seizure of papers, books and documents, contrary to the 4th amendment of the Constitution of the United States, and contrary to a similar provision in section 15, art. 2, Constitution of Arkansas.

The first ten amendments of the Constitution of the United States operate on the Federal Government only, and can not be invoked against State legislation. *Jack* v. *Kansas,* 199 U. S. 372; *Brown* v. *New Jersey,* 175 U. S. 172. Where, however, the provisions of a State constitution are identical with provisions in these amendments, the courts of the State should, and do, regard as controlling decisions of the Supreme Court of the United States upon them.

Appellant relies upon *Boyd* v. *United States,* 116 U. S. 616, as establishing the principles that the "search and seizure" clause reaches to an order of court under a statute providing for a production of books and papers under penalty that the complaint be confessed in an action to recover a penalty; and if such order effects an unreasonable search, it is contrary to such provision; and actions seeking penalties should in this respect be treated as criminal cases.

The scope of *Boyd* v. *United States* is narrowed when ap-

plied to corporations by the recent decision in *Hale* v. *Henkel,* 201 U. S. 43, and the case at bar must be determined in these respects by the last enunciation of that court on this subject. It is established in *Hale* v. *Henkel* that the interdiction of the 5th amendment to the Federal Constitution that "no person * * * shall be compelled in any criminal case to be a witness against himself" does not apply to corporations but to natural persons. The exact language above quoted is also found in section 8, art. 2, Constitution of Arkansas. It is further settled by *Hale* v. *Henkel* that a corporation is entitled to immunity by reason of the 4th Amendment from *unreasonable* search.

As to whether the order in question was an unreasonable search of appellant's books is not properly before the court under the facts. The order for the production of the books was coupled with an order to produce named witnesses for oral examination, and J. Ogden Armour, one of those named in the order, was the first witness called for oral examination. Instead of producing him or showing inability to do so, the appellant declined *in toto* to obey the order.

If appellant had obeyed so much of the order as required the production of witnesses for oral examination, or showed its inability to do so, and showed an attempt to comply with the order to that extent, and had refused to obey the order as to the production of books and papers, then the question would be squarely for determination whether the order in question amounted to an unreasonable search of books and papers. It is pointed out in *Hale* v. *Henkel* that a *subpoena duces tecum* which practically called for all the books, papers and documents of a large business to be brought into court under a sweeping clause was unreasonable and void, but the fact that it was void as to the production of the books and papers did not justify its disobedience as to appearing to testify. In this case the order is very broad, but its harshness is somewhat ameliorated by a proviso that at the examination the witnesses and books should not be required to be produced at any one time in such numbers as to interfere with the business of the defendant. But, as indicated, it would be *obiter dictum* to determine the reasonableness of the order in question in so far as production of books and papers is concerned. Sufficient to say that the statute is valid under the decision in *Hale* v.

*Henkel,* in so far as it authorizes a reasonable order for the production of books, papers and documents of a corporation over which the State has control, and what may be a reasonable order must be determined in each case as it arises.

Foreign corporations doing business in this State under laws permitting them to do so would in this respect be subject to like State control as domestic corporations. *Woodson* v. *State,* 69 Ark. 521; *Railway Company* v. *Gill,* 54 Ark. 101; *St. Louis & San Francisco Railway Company* v. *Gill,* 156 U. S. 649. The control of the Government over State corporations engaged in interstate commerce surely can not be as far reaching as the control of a State over a foreign corporation within its borders by its permission and corporations created by it; and as *Hale* v. *Henkel* sustains the right of the Government to require a production of books, papers and documents in order for the Government to ascertain in a proper action whether a corporation engaged in interstate commerce is proceeding in its business along legal lines, provided such order is reasonable in its terms, it follows, *a fortiori,* that a State may do so over foreign and domestic corporations doing business under authority of its laws.

The question narrows to whether the statute, in so far as it authorizes the order to produce witnesses, is constitutional. The provisions of sections 8 and 9 are attacked as unreasonable, in derogation of natural rights and various clauses of the State and Federal constitutions. These sections, with a few differences immaterial to this issue, are copied from the Missouri anti-trust act, and the clauses under fire here were recently sustained as constitutional by the Supreme Court of Missouri in *State* v. *Standard Oil Co.,* 91 S. W. Rep. 1062.

It is insisted here, as it was in Missouri, that this statute lays a duty on a corporation to produce its officers and employees, or be defaulted for a failure to do so.

If these provisions mean that the corporation must be a policeman, and bring into court on demand its president, bookkeeper or doorkeeper *vi et armis,* certainly it would be an unreasonable imposition. An analysis of the provisions, however, will not justify such construction. These sections evidently mean this, and nothing more: that the corporation shall on demand request any given officer, agent or employee to be present at the time

named for examination as a witness (and in case of production of books and papers that the given officer or agent produce the given books or papers), and on a failure to comply with these requirements that it be defaulted. Of course, this necessarily contemplates an honest effort to produce the testimony called for. When that is made, then the statute is complied with; when it is not, as in this case where the defendant corporation refused to obey any part of the order, then the statute is not complied with, and that brings up the gravest question of the case.

3. Is section 9 authorizing the answer to be stricken out and default judgment rendered when the defendant refuses to obey the order made pursuant to section 8 due process of law? The case most strongly pressed upon the court to sustain the contention that such action is not due process is *Hovey* v. *Elliott,* 167 U. S. 409.

The Supreme Court of the District of Columbia, sitting as a chancery court, made an order on defendants to pay over certain funds which had been paid them by a receiver of the court. This order was disobeyed, and, after citation to show cause against it, the answer of defendants was stricken from the files, and thereafter the bill was taken *pro confesso,* and judgment rendered accordingly. Subsequently suit was brought on the judgment in New York, and the case reached the Supreme Court of the United States on the question whether this was due process of law. Mr. Justice White for the court learnedly and exhaustively reviewed the authorities as to the power of a chancery court to punish for contempt by striking out the answer and proceeding on the bill as confessed, and demonstrated that such power did not exist. He says that in England no single case is found sustaining it, and in America only two, *Walker* v. *Walker,* 82 N. Y. 260, and *Pickett* v. *Ferguson,* 45 Ark. 177. These two cases are condemned as unsound. It is interesting to note that the court in *Pickett* v. *Ferguson* simply followed the New York case of *Walker* v. *Walker,* but Mr. Justice EAKIN filed a dissenting opinion, and reviewed the authorities on the subject, and stated the law as it was done subsequently by Mr. Justice White in this case. The court, after reaching the conclusion that the chancery court did not possess the power to disregard an answer which was in all respects sufficient and had been regularly filed, and ignore the

proof taken in support of it, then passed to the question whether a judgment thus rendered contrary to law was void for want of jurisdiction and subject to collateral attack. It was determined that the judgment was one substantially without hearing, and analogous to a judgment determined upon issues not raised in the pleadings and in the absence of the party. The decision was expressly rested "on the want of power in the courts of the District of Columbia to suppress an answer of parties defendant, and after so doing to render a decree *pro confesso* as in case of default for the want of an answer." In the case at bar the court did not lack power to strike out the answer and proceed as in case of default if it was competent for the State to confer that power on the court. Hence the question here is, not the power or want of power in the court, but the power or want of power in the State to enact the statute under review. If the court in *Hovey* v. *Elliott* had held, as did this court in *Pickett* v. *Ferguson,* that the power to strike out the answer and proceed as in case of default was an inherent power of the court, and still a judgment rendered under it was taking property without due process of law, then *Hovey* v. *Elliott* would be conclusive of this issue. But the decision was predicated upon the premise that the power exercised was contrary to the law of the land, and the sequence followed that property was taken without due process.

In the first judiciary act passed by Congress, in 1789, a statute was enacted giving United States courts in the trial of actions at law the power to require the parties to produce books and writings in their possession or control which contain evidence pertinent to the issue, in cases and under circumstances where the same might be compelled in chancery, and this was the penalty named for a violation of such order:

"If a plaintiff fails to comply with such order, the court may, on motion, give the like judgment for the defendant as in cases of nonsuit; and if a defendant fails to comply with such order, the court may, on motion, give judgment against him by default." Rev. Stat. § 724.

An examination of the 3 Federal Statutes Annotated, pp. 2-5, show this statute has been constantly applied by many of the ablest jurists who have adorned the Federal bench for the past 118 years, and in none of the many decisions applying it and defin-

ing its scope has it been held contrary to due process of law.

The Revised Statutes of Arkansas, adopted in 1837, gave the power to any court of record to compel a party to a suit pending therein to produce any books, papers and documents in his possession or under his control relating to the merits of such suit or to any defense therein. It was provided, as a penalty for failure to obey such order, that the court may nonsuit him, or strike out any pleas or notice of setoff or debar him from any particular defense in relation to such books, papers and documents. Rev. Stat., ch. 116, § 88-92, now found in Kirby's Digest, § § 3074-3078. There were similar provisions enacted for courts of chancery to proceed as on confession against a party failing to obey an order to produce books, papers and documents. Kirby's Digest, § § 3079, 3080.

These statutes have been constantly invoked in the courts of this State almost since its admission into the Union, and their enforcement not opposed as depriving the recalcitrant party of his property without due process. The section under inquiry does not differ in principle or much in detail from section 724 of the Federal statutes nor these statutes so long upon the statute book of this State, in so far as striking out the answer is concerned.

The industry of counsel for appellee develops the fact that such statutes are common in other States. They may be found referred to in the brief. These considerations are important only as indicating that such statutes have long been accepted by bench and bar, State and Federal, as being part of the law of the land. This question was before the Supreme Court of Mississippi under a statute authorizing a default for a failure to answer interrogations; and the statute was attacked as unconstitutional on the strength of the opinion in *Hovey* v. *Elliott*. The court said: "It was a declaration of the Magna Charta that no one should be deprived of a right without being heard in his defense; and this principle is embodied in section 14 of our State Constitution, which provides that 'no person shall be deprived of life, liberty or property, except by due process of law.' However wholesome this doctrine is when applied to courts and to persons exercising judicial or quasi-judicial functions, it has never been supposed that it deprived the Legislature of the power of changing the rules.

of evidence, or of modifying or abrogating altogether the presumptions indulged by the principles of the common law.   If the Legislature may provide for a discovery of evidence in the hands of the adversary, it must be competent for it to impose upon such party the conditions of a failure to make such discovery; for when the Legislature requires the discovery to be made, and imposed the conditions of a refusal, such conditions must become the law of the land, and to pursue the statute is due process of law. (Bagg's case, cited in *Hovey* v. *Elliott,* 167 U. S. 416.)" *Illinois Cent. Railroad* v. *Standford,* 75 Miss. 862.

This case is criticised as reasoning in a circle, but the criticism is not just if the statute is valid.   Of course, an invalid statute gives no force, and is not the law of the land, and proceedings under it are not pursuant to due process; but where the statute is valid, then its provisions become as much the law of the land as any common law inherited from England.   The question then passes to whether the State has power to enact a statute visiting the penalty of a default judgment upon a party required to produce evidence in court who fails and refuses to do so.   The power of the State in such matters is thus stated by Mr. Justice Brewer, speaking for the Federal Supreme Court:  "The State has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not make a denial of fundamental rights or conflict with specific and applicable provisions of the Federal Constitution.   *  *  * The State is not tied down by any provision of the Federal Constitution to the practice and procedure which existed at common law.   Subject to the limitations heretofore named, it may avail itself of the wisdom gathered by the experience of the century to make such changes as may be necessary."  *Brown* v. *New Jersey,* 175 U. S. 172.   See, also, *Wilson* v. *N. C.,* 169 U. S. 586; *Hurtado* v. *California,* 110 U. S. 516.

In *Louisville & Nashville Ry. Co.* v. *Schmidt,* 177 U. S. 230, Mr. Justice White for the court said, at page 236:  "It is no longer open to contention that the due process clause of the 14th Amendment to the Constitution of the United States does not control mere forms of procedure in the State courts or regulate practice therein.   All its requirements are complied with, in the proceedings which are claimed not to have been due process of

law, provided the person condemned has had sufficient notice and an adequate opportunity afforded him to defend." See also *Simon* v. *Craft*, 182 U. S. 436.

Applying these principles, it can not be doubted that the statute in question, like section 724 of the Rev. Stat. of the United States and sections 3079, 3080 of Kirby's Digest, is a matter of procedure and practice in procuring testimony in trials and enforcing orders for production of material and relevant evidence, and in the proceeding leading up to its enforcement it requires sufficient notice and an adequate opportunity to defend, first against the order, secondly it provides for an opportunity, after notice, to obey it, before any default can be taken; and these provisions meet the requirements of the 14th Amendment.

4. Appellant presents ·arguments against the construction placed on section one of this act in *Hartford Ins. Co.* v. *State,* 76 Ark. 303, but the rule of *stare decisis* forbids a re-examination of these questions.

Other matters have been presented and considered, but the views expressed heretofore are fatal to appellant's contentions.

Judgment affirmed.

BATTLE, J., dissents.

WOOD, J., (concurring). The construction given the first section of the anti-trust law of 1905 in *Hartford Insurance Co.* v. *State,* 76 Ark. 303, in my opinion renders the whole act unconstitutional. The offense, or act interdicted by the law, is the "being," "creating," "entering into," "becoming a member of," a trust to regulate or fix prices. That is the "conspiracy to defraud" of which the parties are adjudged guilty. That is the unlawful act which subjects the parties named in the act to a penalty. If the act thus made unlawful is not committed in this State, if the trust has no reference whatever to prices in this State, and does not in any manner affect persons or property in this State, then the Legislature has no power to prohibit, or prescribe money penalties for the commission of, such acts. I care not how altruistic or philanthropic such legislation may be from the viewpoint of political doctrinaires, it is unconstitutional and void. I repeat now, I hope for the last time, what

I have said twice before, that our Legislature in the anti-trust law of 1899 and 1905, never intended their enactment to have any such extra-territorial effect, and this court in my opinion, with all due respect, has not correctly construed it. See my concurring opinion in *Lancashire Insurance Co.* v. *State,* 66 Ark. 466, and my dissenting opinion in *Hartford Insurance Co.* v. *State,* 76 Ark. 303. The first sections of the anti-trust acts of March 6, 1899, and of Jan. 23, 1905, are in language almost identical and in legal effect precisely the same. We gave the correct construction and reached the correct conclusion in construing the first section of this law in *Lancashire Ins. Company* v. *State,* 66 Ark., *supra.*

The words "whether made in this State or elsewhere" were added to the first section of the Act of 1905 to make the language of that act conform to the decision of the court in *Lancashire Insurance Co.* v. *State,* 66 Ark. *supra.* The effect of these added words was to make any act done, no matter where, in furtherance of the conspiracy to defraud the people of Arkansas by entering into a trust to control prices in this State a violation of the law.

If the act had been framed as an exclusion statute for foreign corporations doing business in this State, or as prescribing the terms upon which foreign corporations might be admitted to do business in the State, the lawmakers would never have embraced private individuals and domestic corporations within the provisions of the law, as framed, creating the offense, and prescribing the pecuniary punishment thereof. We must presume that the Legislature knew that private individuals could not be punished for entering a trust beyond the limits of the State that did not affect prices in the State, and that domestic corporations could not have penalties adjudged against them for doing some act out of the jurisdiction of the State that did not affect prices in the State. Would one of our merchants in Little Rock who entered a confederation in London, England, to control the price of an article that was sold and used only in London be subject to the penalties of this law for entering such confederation? Could one of our citizens be deprived of his livelihood and of his property by execution to satisfy a judgment that might be rendered against him as a penalty for an act committed in London? Could domestic corporations be held liable, under similar circumstances,

and mulcted in fines, and have their charters forfeited and their property confiscated, simply because they are creatures of the State? In my opinion, such procedure would be in derogation of charter rights, and could not be justified by any power reserved in the Legislature to "alter, revoke, or amend" the charter of domestic corporations, for charters can not only be altered, revoked, or annulled "in such a manner that no injustice shall be done to the corporators." (Art. 12, § 6, Const. Ark. 1874.) Such procedure would be most unreasonable and unjust to the corporators who may have invested millions in our State, and who at the time of the passage of the act were engaged in a perfectly legitimate business. If they are in a trust of any kind anywhere at the time of the passage of the act, although not to affect prices in this State, they are penalized under this statute, and the statute is *ex post facto* in that respect. It may be impossible for them, within sixty days, to arrange their affairs so as to come within the provisions of the act, without an absolute sacrifice or confiscation of their property, still, if they do not, they are subject to the heavy pecuniary penalties of this law. Well, if individuals and domestic corporations cannot be penalized in heavy money judgments for acts done beyond the jurisdiction of the State, under this law, neither can foreign corporations. The act should be so construed as to make the law equal and uniform in the money penalty to be adjudged against those who come within its inhibition. I have no doubt that such was the intention of the Legislature.

It must be kept in mind that in this, as well as in *Hartford Insurance Co.* v. *State,* the only judgment sought is a pecuniary penalty. It is not a proceeding to forfeit a charter, but to punish for acts done out of the State under a charter that was good when issued and that has never been forfeited or called in question. The appeal only calls in question the validity of the pecuniary judgment. When a foreign corporation has been licensed to do business in the State, it must have the equal protection of the laws. The State can keep it out, but it cannot admit it, and permit it to remain, and at the same time subject it to money penalties that could not be imposed upon domestic corporations or individuals for the same offense. "Such (foreign) corporation shall be entitled to all rights and privileges and subject to all the penalties conferred and imposed by the laws

of this State upon similar corporations formed and existing under the laws of this State." Kirby's Digest, § 828.

These are a few of the numerous considerations which, it seems to me, demonstrate the error in the construction given the law, and show its unconstitutionality as construed.

The provisions of the first section of the act as applicable to the classes named therein cannot be separated. This court can not enter upon the work of legislation. The provisions of the act are so interdependent that this court can not enter upon the work of classification and segregation. The first section cannot be held constitutional as applied to individuals and domestic corporations, and therefore it cannot be held constitutional when applied to foreign corporations. See *American Smelting & Refining Co.* v. *Colorado,* 204 U. S. 103.

The law, to be constitutional, must be confined in its operation to trusts that are formed in this State or elsewhere to affect prices in this State. It must be presumed that the Legislature intended to act within its jurisdiction, that it intended to benefit the people of the State by laws that would protect them from dishonest, unjust and oppressive combinations in restraint of trade, and confederations and monoplies designed to fix, control, and regulate the price of some commodities essential to the life, comfort and happiness of the people.

The language of the law, in my opinion, does not warrant a construction that puts the Arkansas Legislature in the unenviable attitude of driving from our State those individuals and corporations who would come here and, by engaging in competitive business, lower the price of the various articles enumerated in the statute. I am unwilling to convict the Legislature of the unwisdom involved in a policy that can but bring dire disaster to the business interests of the State, and ruin to the people whom the Legislature must be presumed to have intended to benefit and protect.

The law, as construed, does not relieve the people of the necessity of buying trust-made articles, and at trust-fixed prices, but it only compels them to go into other States for them and to pay the increased cost. For there is no law in Arkansas that can prevent the merchants of New York, St. Louis, and Memphis, from selling our merchants and people their goods, wares and

merchandise at trust-fixed prices, and there is no law, and can be none, that will prevent the insurance companies of foreign states and countries from entering into trusts and combinations to fix the rates of insurance for property elsewhere.   There can be no law to prevent our people, when the exigencies of their business require, from insuring their property in old-line insurance companies that have been driven from the State.   But all this adds to the burden of the people, instead of making it lighter.   Hence, I still contend that this court made a great mistake in looking to executive messages, political platforms of the dominant party, and other so-called contemporaneous "history of the times," to aid in the construction of language which in my opinion really needs no construction, but which plainly limits the operation and effect of the law to territory within the jurisdiction of the Legislature—to Arkansas.   But I am powerless as an individual judge to overrule *Hartford Fire Ins. Co.* v. *State;* and, as I see nothing in sections eight and nine to render the act unconstitutional, for reasons stated by the Chief Justice, under the rule of *stare decisis,* I concur in the judgment only.