## SPERRY AND HUTCHINSON COMPANY *v.* STATE OF INDIANA.

[No. 23,417. Filed March 25, 1919.]

1. CONSTITUTIONAL LAW. — *Police Power.* — *Trading Stamps.* — The practice of furnishing, using and redeeming trading stamps is subject to regulation.and license under the police power of a state. p. 177.

2. CONSTITUTIONAL LAW.—*Due Process.*—*Regulation of Trading Stamps.*—Legislation regulating, and requiring a license for, the handling of trading stamps is not such an interference with the rights of citizens to pursue a legitimate business or a lawful calling as to be a denial of due process of law within the meaning of §1 of the fourteenth amendment to the federal Constitution. p. 178.

3. CONSTITUTIONAL LAW.—*Validity of Act.*—*Legislative Power.* —Where doubt exists as to whether a business is subject to regulation under the police power, the determination of the question is within the province of the legislature; and the judgment of the court should be substituted for that of the legislature only where the legislation is purely arbitrary and without reason. p. 179.

4. COURTS. — *Construction of Federal Constitution.* — *Supreme Court Opinions.*—The construction placed upon the provisions of the federal Constitution by the Supreme Court of the United States is adopted by the courts of the several states. p. 179.

5. COURTS. — *Decisions.* — *Federal Supreme Court.* — *Effect on State Courts.*—A decision of the federal Supreme Court sustaining the validity of a state statute, though not binding on the state courts, where the statute is attacked as being in conflict with a similar provision in a state constitution, is strongly persuasive as authority and is generally followed. p. 179.

6. CONSTITUTIONAL LAW. — *Classification.—Legislative Power.—* The legislature has power to make a reasonable classification of persons for purposes of legislation, and to determine in the first instance what classification is just and reasonable in view of the purposes of the legislation; and the classification by the legislature will be sustained by the court, unless it is so manifestly arbitrary that reasonable minds could not differ on the subject. pp. 181, 182.

7. CONSTITUTIONAL LAW.—*Legislative Classification.—License.— Validity.—Trading Stamps.*—The classification in chapter 184, Acts 1915 p. 674, providing for the licensing of only such corporations as are organized for the purpose of redeeming trading stamps, etc., in cash or in merchandise not the product of its own manufacture, and applying in like manner to individuals so engaged, but not applying to other corporations or persons, is so arbitrary and unreasonable as to render the act void under the fourteenth amendment to the federal Constitution and under Art. 1, §23, of the state Constitution, since the public morals and the public welfare, in the interest of which such a classification must be made, would be no more injuriously affected by the business conducted by one class than by that of the other. p. 181.

From Decatur Circuit Court; *John W. Donaker,* Judge.

Prosecution by the State of Indiana against the Sperry and Hutchinson Company. From a judgment of conviction, the defendant appeals. *Reversed.*

*Pickens, Cox & Conder, Wickens, Osborn & Hamilton, L. C. Cravens* and *Frank T. Alcott,* for appellant.

*Ele Stansbury,* Attorney-General, *Tremain & Turner, Charles Wesley Dunn, Elmer E. Hastings,* and *Dale F. Stansbury,* for the state.

LAIRY, J.—Appellant was charged and convicted of violating the provisions of an act of the general assembly entitled "An Act regulating and providing a license for the handling of trading stamps, coupons and other similar devices." Acts 1915 p. 674.

Section 1 of the act provides: "That every person, firm or corporation, who shall sell or furnish for use in,

with or for the sale of any goods, wares or merchandise, any trading stamps, coupons or other similar devices, which are given free with the purchase of any goods or exchanged for any labels or trade marks of manufactured goods and redeemed for money, premiums, or other values by individuals or corporations organized for the purpose of such redemption and who are not manufacturers of products for which they are given or exchanged, which shall entitle the purchaser receiving the same with such sale of goods, wares or merchandise to procure or receive from any person, firm or corporation any money, goods, wares or merchandise free of charge upon the surrender of any number of said trading stamps, coupons or other similar devices, shall before so furnishing, or selling the same, obtain a separate license from the treasurer of the county wherein such furnishing or selling shall take place, for each and every store or place of business in that county in which such trading stamps, coupons or other similar devices are offered to the consumer or dealer." Section 2 of the act provides for the issuing of licenses and for a license fee of $1,000 for each license issued. Section 4 provides a penalty for the violation of any of the provisions of the act.

The first count of the affidavit charged that appellant, at the time and place stated therein, did unlawfully sell to Roy C. Kanouse certain trading stamps, at a price not known to affiant, to be given free with goods and merchandise purchased from said Roy C. Kanouse and redeemable for premiums, appellant not having a license at the time as provided by the act, and not being the manufacturer of the products for which such trading stamps are given or exchanged. The second count differs from the first in two particulars. It does not charge that appellant sold trading stamps to Roy C. Kanouse, but it charges that appellant did furnish such

trading stamps to him for use in the sale of certain goods and merchandise of the said Roy C. Kanouse. It does not charge that such trading stamps were to be given free by Kanouse with merchandise sold.

The errors assigned are that the trial court erred in overruling appellant's motion to quash the affidavit and in overruling its motion for a new trial.

The motion to quash the affidavit is based on the ground as asserted by appellant that the act on which it is based is void for the reason that it conflicts with the fourteenth amendment to the federal Constitution and also violates certain provisions of the Constitution of this state.

The first attack made on the validity of the act is based on the general proposition advanced by appellant that the furnishing of trading stamps to merchants which are to be given free to the purchaser with merchandise sold, and which are to be redeemed by any individual or any corporation organized for the purpose of such redemption, and which entitle the purchaser receiving the same to procure money, goods or merchandise free of charge by surrendering a certain number of such trading stamps, is a proper and honest business enterprise in which any person or corporation has a natural right to engage within the meaning of §1, Art. 1, of our state Constitution. It is also asserted that the act violates §1 of the fourteenth amendment of the federal Constitution, for the reason that the right of a citizen to engage in a proper and legitimate business is a privilege or an immunity of citizenship which cannot be denied or abridged by a state law.

In support of the proposition that the transactions at which the statute is aimed are of such a nature that they are not subject to be regulated, controlled or forbidden by legislation enacted in the exercise of the police power, appellant contends that the business has no tend-

ency to affect the public health, the public safety or the public morals, comfort or welfare. It is contended that the business which the act seeks to regulate has no tendency to deceive or defraud any one, and that it does not appeal to the gambling instinct by offering prizes to be disposed of by chance or by a lottery scheme or gift enterprise. On the other hand, it is asserted that the merchandise or cash, received in exchange for trading stamps given with the sale of goods, represents a discount allowed to the purchaser as a cash customer, and that it is beneficial both to the merchant and to his customer, in that it increases the cash sales of the merchant, thus assisting him in taking advantage of trade discounts, and, at the same time, it enables the customer to acquire trading stamps, which represent his discount for cash on small purchases as well as upon those for larger amounts.

Prior to the decision by the Supreme Court of the United States in the case of *Rast* v. *Van Deman, etc., Co.* (1915), 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A 421, Ann. Cas. 1917B 455, most of the decisions on the subject by the state and federal courts sustained the position of appellant by holding that the practice of furnishing, using and redeeming trading stamps in the manner described was a legitimate business not intrinsically so inimical to good morals and public welfare as to subject it to regulation or suppression under the police power of the state. *Humes* v. *City of Little Rock* (1898), (C. C.) 138 Fed. 929; *State, ex rel.* v. *Sperry, etc., Co.* (1910), 110 Minn. 378, 126 N. W. 120, 30 L. R. A. (N. S.) 966; *People* v. *Gillson* (1888), 109 N. Y. 389, 17 N. E. 343, 4 Am. St. 465; *Ex Parte McKenna* (1899), 126 Cal. 429, 58 Pac. 916. Other authorities less numerous are found to the contrary. To this class belong the cases

of *Rast* v. *Van Deman, etc., Co., supra; Tanner* v. *Little* (1915), 240 U. S. 369, 36 Sup. Ct. 379, 60 L. Ed. 691, and *Pitney* v. *Washington* (1915), 240 U. S. 387, 36 Sup. Ct. 385, 60 L. Ed. 703.

The federal Constitution provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law. §1, 14th amendment to federal Constitution. In the cases last cited the Supreme Court of the United States considered the effect of these provisions of the federal Constitution and their application to laws of states by which the use, distribution and redemption of trading stamps or similar devices in the sale of merchandise were regulated or in effect forbidden by the exaction of a prohibitory license. In the first one of these cases, the court refers to the fact that statutes of the character under consideration had been passed in a great number of the states of the union, and that, in view of the decisions of courts which had passed on the question, the weight of authority was in favor of the proposition that such legislation constitutes an unwarranted interference with a lawful calling, and deprives citizens of the United States of their right to pursue a legitimate business of their own selection, thus depriving them of their liberty without due process of law within the meaning of the fourteenth amendment to the Constitution. The court says: "We appreciate the seriousness of the situation. Regarding the number of cases only, they constitute a body of authority from which there might well be hesitation to dissent except upon clear compulsion."

The court then proceeds to hold that the business which the statute under consideration is intended to

regulate is one which may be regarded as inim-

3.   ical to good morals and public welfare; and that, in doubtful cases, it is the province of the legislature to decide whether it is so or not.   The court says: "Certainly in the first instance, and, as we have seen, its judgment is not impeached by urging against it a difference of opinion.   *Chic. Burl. & Quincy R. R. Co.* v. *McGuire* (219 U. S. 549) and *German Alliance Ins. Co.* v. *Kansas* (233 U. S. 389), *supra.*   And it is not required that we should be sure as to the precise reasons for such judgment or that we should certainly know them or be convinced of the wisdom of the legislation." It is conceded by the court in the decision under consideration that judicial opinion cannot be controlled by legislative opinion of what are fundamental rights.   It is said:   "This is freely conceded; it is the very essence of constitutional law, but its recognition does not determine supremacy in any given instance."   The opinion seems to rest on the proposition that the judgment of the court in such cases is supreme and should be substituted for that of the legislature only when the action of the legislature is clearly supported by no reason and is purely arbitrary; in other words, where the question is so free from doubt that no sound reason can be found to support an opposite conclusion.   The court says: "It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength.   It is not within the competency of courts to arbitrate in such contrariety."

In construing and applying the provisions of the federal Constitution, the courts of the several states adopt the construction placed on such provisions by the

4.   Supreme Court of the United States.   *Rothschild & Co.* v. *Steger Piano Co.* (1912), 256 Ill. 196, 99 N. E. 920, 42 L. R. A. (N. S.) 793, Ann. Cas.

5.   1913E 276; *People, ex rel.* v. *Wemple* (1893), 138

N. Y. 1, 33· N. E. 720, 19 L. R. A. 649. It is the province of the state courts to interpret and apply the provisions of their state constitutions, but where a provision of a. state constitution is similar in meaning and application to a provision of the federal Constitution, it is desirable that there should be no conflict between the decisions of the state courts and the federal courts on the subject involved.· While a decision of the Supreme Court sustaining the validity of a state statute as not violative of any provision of the fourteenth amendment is not absolutely binding on the courts of the state when the statute is attacked as being in conflict with a provision of the state constitution having the same effect, still, the federal decision in such cases is strongly persuasive as authority, and is generally acquiesced in by the state courts. 6 R. C. L. p. 84, §83; *Hammond Packing Co.* v. *State* (1907), 81 Ark. 519, 100 S. W. 407, 1199, 126 Am. St. 1047; *State* v. *Ardoin* (1899), 51 La. Ann. 169, 24 South. 802, 72 Am. St. 454. Regardless, however, of any of the considerations just mentioned, the court in this case is impelled to follow the federal decisions cited as a matter of principle. It is in full accord with the propositions announced therein and with the conclusions reached.

Having disposed of the first question adversely to appellant, the court is confronted by another objection which assails the validity of the act in question at a point more vulnerable. Even though it be conceded or decided that the business against which the act under consideration is directed is of such a nature as to subject it to regulation under the police power, still that power must be exercised in a valid manner, and the act by which such regulations are imposed must be so framed as not to violate any restrictions imposed by the state or federal Constitutions. It is asserted by appellant that the act as framed denies to it the equal protec-

tion of the law in violation of the fourteenth amendment, and that it violates §23 of the Bill of Rights of the state Constitution, which provides that the general assembly shall not grant to any citizen or class of citizens privileges and immunities which upon the same terms shall not equally belong to all citizens.

It is well settled that the legislature has power to make a reasonable and proper classification of persons for purposes of legislation, but that such classification must not be capricious or arbitrary. To be valid, such a classification must be based on some justifiable distinction when considered in the light of the purposes and objects of the act involved. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Dixon* v. *Poe* (1902), 159 Ind. 492, 65 N. E. 518, 60 L. R. A. 308, 95 Am. St. 309.

The act under consideration makes it unlawful for the persons and corporations to which it applies to engage in the distribution and redemption of trading stamps, coupons or other like tokens, symbols or devices, without first procuring a license at a cost which is admitted to be prohibitory, and provides that any person or corporation violating the act shall be punished by a heavy fine. As the court understands the act, it applies only to corporations which are organized for the purpose of redeeming trading stamps or other like symbols, either in cash or with articles of merchandise not the product of its own manufacture, and to individuals so engaged where the trading stamps or other symbols used are redeemed in like manner, while all other persons or corporations may engage in such business without let or hindrance.

In making a classification for legislative purposes it is the province of the legislature in the first instance to determine what classification is just and reason-

6. able in view of the purpose to be accomplished; and the court will not lightly substitute its judgment on such question for that of the legislature. A classification made by the legislature will be sustained by the courts, unless it is so manifestly and unmistakably arbitrary as to leave no room for reasonable minds to differ on the subject. It is not enough that differences of opinion may exist, and that cogent reasons may be urged against the classification adopted. Every presumption is in favor of the validity of the act. If any state of facts within the fair range of probability can be reasonably supposed, which would supply an adequate reason on which to base the classification made, such state of facts will be assumed to have existed when the law was enacted. *Lindsley* v. *Natural Carbonic Gas Co.* (1910), 220 U. S. 61, 78, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C 160; *Rast* v. *Van Deman, etc., Co., supra.*

An act of the kind under consideration can be justified only on the theory that the business against which it is directed was of such a nature as to affect and
7. to influence injuriously the public morals and the general welfare of society, and that the purpose of passing the act was to shield the public from the evil potentialities of the business. Considering the classification made in the light of the avowed purpose and object of the act, it is difficult to assume a state of facts which would afford a reasonable ground upon which to base a distinction between the classes formed by the act. Let us suppose that two corporations are engaged in the business under discussion, one of which is organized for the purpose of conducting such business and of making the redemption contemplated with money or with articles of merchandise acquired by purchase, while the other corporation is organized for the purpose of manu-

facturing, and it makes the redemption in articles which-are the product of its own manufacture.   If the supposed business of each be considered from the standpoint of the effect on the public morals and the general welfare of society, can it be said for any conceivable reason or under any supposable state of facts that the business conducted by the former is more deleterious in its effects on society than that conducted by the latter?   The classification adopted must rest on some reason which inheres in the subject-matter with which the legislation deals.   The reason must be substantial and not merely artificial.   *Bedford Quarries Co.* v. *Bough, supra.*   The court can conceive of no reason upon which the classification adopted in the act can be sustained.   Certainly no reason can be suggested resting on any consideration of public morals or general public welfare, and reasons based on any other considerations would be without force.

For the reasons stated, the statute on which the affidavit was based is void.   The judgment is reversed, and the trial court is instructed to sustain appellant's motion to quash the affidavit.

Harvey, C. J., not participating in consideration or decision.

NOTE.—Reported in 122 N. E. 584.  Regulations as to trading stamps, prizes and gifts, 78 Am. St. 267, 12 C. J. 921, 1280, 38 Cyc 927.  When a decision of the United States Supreme Court is not binding on state courts, Ann. Cas. 1913E 281.  See under (3) 12 C. J. 794; (4) 15 C. J. 931; (5) 15 C. J. 929; (7) 12 C. J. 1155.