CITY OF INDIANAPOLIS, WILLIAM HUDNUT, AS MAYOR, FRED ARMSTRONG, AS CITY CONTROLLER *v.* JOHN WRIGHT, D/B/A TOUCH OF CLASS MASSAGE PARLOR AND MARY KAY GILBERT, MARY JO KOCHER.
CONSOLIDATED CITY OF INDIANAPOLIS *v.* KARON GRIFFIN ET AL.

[Nos. 477S272; 777S488. Filed January 19, 1978.]

*David R. Frick,* Corporation Counsel, *Stephen Goldsmith,* Chief Trial Deputy, of Indianapolis, for appellants.

*John R. Cromer,* of Indianapolis, for appellees.

HUNTER, J.—Cause No. 477S272 was initiated by John Wright and Mary Kay Gilbert, appellees, when, on October 14, 1976, they filed their complaint for a temporary restraining order, permanent injunction and declaratory relief. A temporary restraining order was issued and subsequent to a hearing pursuant to Ind. R. Tr. P. 65(A)(2), the trial court granted the permanent injunction and the declaratory relief prayed for. The trial court's judgment determined that the massage parlor ordinance at issue here was unconstitutional. More specifically it found that state law has preempted municipal legislation regarding criminal sexual activity, making the ordinance an attempted local law prohibited by the Indiana Constitution. He also found the ordinance violative of the due process and equal protection provisions of the Indiana Constitution and of the prohibition against unreasonable searches and seizures of both the Indiana and United States Constitutions.

Cause No. 777S488 involves a nearly identical proceeding which resulted in an identical judgment one day later. Although separately tried and appealed, both appellants' and appellees' briefs present identical arguments to the issues involved. Appellants in Cause No. 477S272, the city, its mayor and its controller, sought transfer pursuant to Ind. R. Ap. P. 4(A)(10). Transfer was granted and Cause No 777S488 is consolidated therewith for the purposes of this opinion. Hereafter the appellants shall be referred to as "the city" and the appellees shall be referred to as "the massage parlors" for the sake of convenience, unless it is otherwise indicated.

I.

The City argues that the trial court erred in its determination that the massage ordinance was an attempted local law

in an area preempted by state law and therefore prohibited by the Indiana Constitution.

In *City of Indianapolis* v. *Sablica,* (1976) 264 Ind. 271, 342 N.E.2d 853, this Court invalidated a municipal ordinance which made it a misdemeanor for one to interfere with or taunt a police officer. We determined that the legislature, by creating the state criminal offense of resisting or interfering with an officer, had determined that a general law shall apply and that local legislation on the same subject was constitutionally impermissible. Both the statute and the ordinance in that case provided criminal penalties for violation of their provisions.

In the present case the City-County Council of the City of Indianapolis and Marion County enacted an ordinance, City-County Council General Ordinance No. 110, providing for the detailed regulation of massage parlors. Among other things, this ordinance requires massage parlors and other similar establishments to be licensed by the City Controller. Massage therapists are prohibited from administering a massage to a person of the opposite sex, touching the sexual or genital area of any person or from performing, offering or agreeing to perform any act which would require the touching of the patron's genitals. Therapists are required to wear nontransparent outer garments and patrons are required to have their sexual and genital areas covered by a towel or garment at all times.

Ordinance No. 110 contains the following section relating to enforcement:

"Sec. 27-731. Complaints.

"All complaints of alleged violations of the provisions of this chapter shall be made in writing to the Controller. *Upon learning of violation of the provisions of this chapter and/or related ordinances or laws, the Controller shall utilize the enforcement remedies provided in Section 17-49.*"

The enforcement remedies contained in the section referred to authorize the controller to suspend or revoke the license of the licensee. Sec. 17-49 does not provide criminal misdemeanor penalties for violation of the duties contained in the ordinance.

The massage parlors argue that the general penalty provision of the City-County Ordinances provide misdemeanor penalties for violation of the massage ordinance.

"Sec. 1-8.  General penalties for violations of Code.

"(a)  Whenever in any chapter, article, division or section of this Code, or of any ordinances amendatory thereof or supplemental thereto, the doing of any act, or the omission to do any act or to perform any duty, is declared to be a violation of this Code, or of any such amendatory or supplemental ordinance, or of any provision thereof, or is declared to be unlawful, *and if there shall be no fine or penalty otherwise specifically prescribed or declared for any such violation,* or for doing or for omitting to do any such act or to perform any such duty, any person who shall be convicted of any such violation, or of doing or of omitting to do any such act or to perform any such duty shall be fined, by way of a penalty therefor, not more than one thousand dollars ($1,000.00) for each such violation, act or omission, to which may be added imprisonment not exceeding one hundred and eighty (180) days." [Emphasis supplied.]

The trial court accepted the massage parlors' argument and invalidated the ordinance. However, the general penalty provision applies only if no penalty is specifically provided for by the ordinance defining the duty. The massage ordinance provides a specific penalty in the previously quoted section by mandating the controller to use the enforcement provisions of Sec. 17-49. This is the exclusive enforcement remedy, as is indicated by the use of the word "shall." The fact that Sec. 17-49 gives the controller discretion in determining whether or not to suspend or revoke a license does not indicate that the council intended otherwise.

In support of the trial court's decision that the ordinance is an invalid local law, the massage parlors cite the following

state statutes, contending that these statutes preempt similar local laws: Ind. Code § 35-1-89-1 (Burns 1975) [sodomy, now repealed]; Ind. Code § 35-45-4-1 (Burns Supp. 1977) [new penal code provision regarding public indecency]; Ind. Code § 35-1-83-3 (Burns 1975) [public indecency, now repealed]; Ind. Code § 35-45-4-2 (Burns Supp. 1977) [new penal code provision on prostitution]; Ind. Code § 35-30-10.1-3 (Burns Supp. 1977) [obscene performance]. The massage parlors contend that the city-county ordinance prohibits the same acts as are prohibited by the above state statutes and that the ordinance is therefore invalid. We have, however, already determined that the ordinance does not provide for misdemeanor penalties and there is no state statute which establishes a licensing system for massage parlors. *Lancaster* v. *Municipal Court,* (1972) 6 Cal.3d 805, 100 Cal. Rptr. 609, 494 P.2d 681, is distinguishable in that the ordinance involved in that case provided for misdemeanor penalties. Under the facts of this case we do not believe that the present massage parlor ordinance involves the same "subject matter" as the state statutes. *City of Indianapolis* v. *Sablica,* (1976) 264 Ind. 271, 342 N.E.2d 853, 855. The ordinance establishes a licensing plan whereas the statutes establish a penal scheme. The ordinance is therefore not unconstitutional under Ind. Const. Art. 4 §§ 22 and 23 as being an attempted local law where the legislature has determined that a general law shall apply.

II.

The trial court determined in each of these cases that the massage parlor ordinance was contrary to the due course of law and equal protection provisions of the Indiana Constitution. No findings was made with respect to the similar federal constitutional provisions. The city argues that the trial court was erroneous in its determination. The massage parlors, in support of the trial court, argue that the ordinance violates due course of law in that it deprives massage therapists of their

fundamental right to earn a livelihood, that it unconstitutionally discriminates on the basis of sex, and that it creates an unconstitutional irrebuttable presumption that opposite sex massages lead to illicit sexual relations.

This Court's interpretation of a state constitutional provision is an independent judicial act. Federal cases are nonetheless persuasive, *Reilly* v. *Robertson*, (1977) 266 Ind. 29, 360 N.E.2d 171, as are the decisions of the courts of last resort of other state jurisdictions. *Allen* v. *Van Buren Twshp.*, (1962) 243 Ind. 665, 184 N.E. 2d 25.

> "It is the province of the state courts to interpret and apply the provisions of their state Constitutions, but where a provision of a state Constitution is similar in meaning and application to a provision of the federal Constitution, it is desirable that there should be no conflict between the decisions of the state courts and the federal courts on the subject involved. While a decision of the Supreme Court sustaining the validity of a state statute as not violative of any provision of the Fourteenth Amendment is not absolutely binding on the courts of the state when the statute is attacked as being in conflict with a provision of the state Constitution having the same effect, still, the federal decision in such cases is strongly persuasive as authority, and is generally acquiesced in by the state courts." *Sperry & Hutchinson Co.* v. *State*, (1919) 188 Ind. 173 at 180, 122 N.E. 584 at 587.

Numerous state and federal courts have considered the constitutionality of similar ordinances. Even before certain recent developments, the prevailing view upheld their constitutionality. See, Annot. 51 A.L.R.3d 929 (1973). Recently, appeals from three state court decisions upholding the constitutionality of massage parlor ordinances have been dismissed by the United States Supreme Court for want of a substantial federal question. *Smith* v. *Keator*, (1974) 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 dismissing 285 N.C. 530, 206 S.E.2d 203; *Rubenstein* v. *Township of Cherry Hill*, (1974) 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 dismissing No. 10,027 (N.J. Sup. Ct.) (unreported); *Kisley* v. *City of Falls Church*, (1972) 409 U.S. 907, 93 S.Ct.

237, 34 L.Ed.2d 169 dismissing 212 Va. 693, 187 S.E.2d 168. By virtue of the Supreme Court's decision in *Hicks* v. *Miranda,* (1975) 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223, those dismissals are to be treated as dispositions on the merits of the issues raised. Lower federal courts are bound by the decisions of these summary dispositions. Lower federal courts which have since considered similar massage parlor ordinances have affirmed their constitutionality based upon these summary dispositions. *Colorado Springs Amusements* v. *Rizzo,* (3d Cir. 1975) 524 F.2d 571, cert. den. 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (Brennan, J., dissenting with opinion) ; *Hogge* v. *Johnson,* (4th Cir. 1975) 526 F.2d 833; cert. den. 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (Brennan, J., dissenting) ; *Cullinane* v. *Geisha House,* (D.C. Ct. App. 1976) 354 A.2d 515, cert. den. 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (Brennan, J., dissenting) ; *Tomlinson* v. *Mayor and Aldermen,* (5th Cir. 1976) 543 F.2d 570.[1] It is therefore settled that the due process and equal protection provisions of the federal constitution are not violated by massage parlor ordinances as involved here.

Jurisdictions other than those previously cited have also sustained similar ordinances against constitutional attack. *Thompson* v. *City of Huntsville,* (Ct. Crim. App. Ala. 1976) 329 So.2d 664, cert. den. 329 So.2d 666; *Oueilhe* v. *Lovell,* (1977) 93 Nev. 111, 560 P.2d 1348; *Exparte Maki,* (1943) 56 Cal. App. 635, 133 P.2d 64 to the extent it is not overruled by *Lancaster* v. *Municipal Court,* (1972) 6 Cal.3d 805, 100 Cal. Rptr. 609, 494 P.2d 681 (invalidating an ordinance on state preemption grounds).[2]

Having reviewed these decisions and their rationale, it is unnecessary to pursue the parties' various constitutional argu-

---

1. Those federal cases which have found such ordinances unconstitutional were previous to the cited summary dispositions and are apparently overruled. Cianciolo v. Members of the City Council (E.D. Tenn. 1974) 376 Fed. Supp. 719; Joseph v. House (E.D. Va. 1973) 353 Fed. Supp. 367.
2. Apparently J.S.K. Enterprises, Inc. v. Lacey, (1971) 6 Wash. App. 43, 492 P. 2d 600 is the only authority that would hold to the contrary.

ments for we are in agreement with the propositions and results of the overwhelming weight of authority which finds massage parlor ordinances prohibiting opposite sex massages to be constitutional.

### III.

The trial court found that the inspection provisions of the ordinance violated the prohibitions of the United States and Indiana Constitutions against unreasonable searches and seizures. The relevant section of the ordinance is as follows:

"Every massage school, massage parlor, massage therapy clinic, or bath house shall be open for inspection during all business hours and at other reasonable times by police officers, health and fire inspectors and duly authorized representatives of the City Controller upon the showing of proper credentials by such persons." Sec. 17-729 (j).

The city contends that the trial court erred in this determination. The massage parlors rely principally on the companion cases *Camara* v. *Municipal Court*, (1967) 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; *See* v. *City of Seattle*, (1967) 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. In *Camara* the Fourth Amendment was held to prohibit prosecution for the refusal to permit building inspectors to inspect a personal residence without a warrant. In *See* the Fourth Amendment was held to prohibit prosecution for refusing to permit fire department inspectors to inspect a locked warehouse without a warrant. These opinions "reserved decision on problems of 'licensing programs' requiring inspection, saying they can be resolved 'on a case by case basis under the general Fourth Amendment standard of reasonableness.' " *Colonnade Catering Corp.* v. *U.S.*, (1970) 397 U.S. 72 at 77, 90 S.Ct. 774 at 777, 25 L.Ed.2d 60 at 64.

The limitations on administrative searches supporting a licensing program have not yet been made clear. See, *Brennan* v. *Gibson's Products Inc.*, (E.D. Tex 1976) 407 Fed. Supp. 154. Certain factors to be used in determining whether a

search is reasonable can be ferreted out, such as whether the statute provides criminal penalties for the refusal to permit inspection, whether notice is given of an impending inspection, *Wyman* v. *James*, (1971) 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408, whether notice is unreasonable given the ease with which violations can be concealed in a short period of time, *U.S.* v. *Biswell*, (1972) 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87, whether the inspection is of a residence or a business and whether the business involved has a history of regulation, supervision and inspection, *Biswell, supra; Colonnade Catering Corp., supra.* In declaring unconstitutional a border patrol search of an automobile, the Court distinguished *Colonnade* and *Biswell* by saying:

> "A central difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade. . . ." *Almeida-Sanchez* v. *U.S.*, (1973) 413 U.S. 266 at 271, 93 S.Ct. 2535 at 2538, 37 L.Ed.2d 596 at 601.

The inspection system authorized here does not fit neatly into the factual framework of any of the cited cases. A consideration of the above-mentioned factors reveals the following. No criminal prosecutions are authorized for the refusal to permit inspection, only the license is affected. Notice would seem to be unreasonable given the ease with which some violations could be concealed. It is a business which is being inspected and one which has a history of regulation, Annot. 17 ALR2d 1183 (1951), albeit not as extensive as the liquor or firearms industries, and as a member of a regulated business, a licensee does impliedly consent to inspections at any and all reasonable times and places by obtaining a license, *Biswell, supra.* It should also be noted that inspections are limited by the ordinance to business hours and other reasonable times. We cannot presume that the city officials will conduct inspections in a manner other than constitutional, although this certainly is possible under this or any other grant of authority. Weighing the

various factors the administrative inspection scheme author-
ized here is not unreasonable nor in contravention of the
prohibitions of the Indiana or United States Constitutions.

In view of our decision we need not reach the city's other
specification of error.

The decisions of the trial court are erroneous and the judg-
ments should be reversed.

Judgments reversed.

Givan, C.J., DeBruler and Pivarnik, JJ., concur; Prentice, J.,
not participating.

NOTE.—Reported at 371 N.E.2d 1298.