527 N.E.2d 715 (1988)
Hilda CHEESEMAN, et al., Helen Abels, et al. Appellants (Defendants below),
v.
JAY SCHOOL CORPORATION CLASSROOM TEACHERS ASSOCIATION, Inc., Monroe County Education Association, Appellees (Plaintiffs below).
No. 05A04-8710-CV-00318.
Court of Appeals of Indiana, Fourth District.
August 30, 1988.
*716 David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., Ronald L. Chapman, Cotner, Andrews, Mann & Chapman, Bloomington, for Helen Abels, et al.
William T. Hopkins, Jr., Gallucci, Hopkins & Theisen, Fort Wayne, for Hilda Cheeseman, et al.
Richard J. Darko, Lowe Gray Steele & Hoffman, Indianapolis, Dean A. Young, Ford & Young, Hartford City, for Jay School Corp. Classroom Teachers Assoc., Inc.
CONOVER, Presiding Judge.
Defendants-Appellants, nonmember[1] certificated employees of the Monroe County Community School Corporation and the Jay County School Corporation (nonmembers) appeal judgments entered against them in favor of plaintiffs-appellees Monroe County Education Association (MCEA) and Jay County Teachers Association (JCTA) (collectively, the unions). This appeal was consolidated for review under Indiana Rules of Appellate Procedure, Rule 5(B).
We affirm in part, reverse in part, and remand.
We restate the issues in this appeal as follows:
1. whether the trial court erred by entering judgments in favor of the unions,
2. whether nonmembers' fair share fees were correctly determined, and
3. whether nonmembers' 42 U.S.C. § 1983 counterclaims should have been heard and determined.
The Monroe and Jay County School Corporations entered into collective bargaining agreements with the unions for the 1983-84 and 1984-85 school years. The agreements required nonmembers to reimburse the unions for the nonmembers' "fair share" of the unions' costs of collective bargaining and contract administration. The method provided in these agreements for such reimbursement was a rebate plan, i.e., nonmembers initially were required to pay the unions a sum equivalent to a member's union dues on a periodic basis. The sums thus paid under these plans included both union expenses properly assessable to *717 nonmembers and sums earmarked for support of the unions' ideological activities which union members are and nonmembers are not required to pay.
These plans provided after a period of time had run, nonmembers could object to the fees assessed by these unions on the basis the amounts the nonmembers were required to pay were in excess of their fair share of collective bargaining and contract administration expenses. When such objections were made, the unions were then required to calculate the nonmembers' fair share expenses and rebate any excess money nonmembers had paid to the unions.[2]
When the nonmembers refused to pay their fair share assessments, the unions brought suit to compel payment thereof for the 1983-84 school year, then included the 1984-85 school year by way of amendment to their complaints. The nonmembers filed counterclaims alleging these rebate schemes violated their First Amendment rights. The trial court, however, denied the counterclaims.
Next, the nonmembers filed motions to stay based upon the United States Supreme Court's holding in Chicago Teachers Union v. Hudson (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232. The motions to stay filed in the MCEA cases were not ruled upon, but those filed in the JCTA cases were denied. Nonmembers then filed second Chicago Teachers-oriented counterclaims requesting damages and injunctive relief. These claims were also denied.
The trial court, basing its decisions on stipulated evidence, rendered judgments against the nonmembers. This consolidated appeal followed.
Nonmembers contend the controverted rebate schemes violate their First Amendment rights, citing Chicago Teachers as authority. Because that case is squarely on point, we are bound by its provisions. Waggoner v. Feeney (1942), 220 Ind. 543, 44 N.E.2d 499; Sperry & Hutchinson Co. v. State (1919), 188 Ind. 173, 122 N.E. 584, 586-587.
In Chicago Teachers, the United States Supreme Court found a rebate scheme similar to those here involved unconstitutional because it violated a nonmember's First Amendment freedom of association rights. Justice Stevens, speaking for the majority, said
[A] remedy which merely offers dissenters the possibility of a rebate does not avoid the risk that dissenters' funds may be used temporarily for an improper purpose. "[T]he Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining."
Chicago Teachers, 106 S.Ct. at 1075. In addition, the court announced several procedural safeguards it considered necessary to protect those rights:
(1) the union's collection procedures must avoid any risk the nonmember's funds might be used for purposes other than collective bargaining,
(2) the union must provide nonmembers with adequate information as to how the fair share fee was calculated before it may collect such fee,
(3) the union's plan must provide for a reasonably prompt decision by an impartial decision maker if the nonmember disputes the union's calculations, and
(4) disputed amounts must be placed in escrow while challenges concerning collection procedures are pending. Thus, the trial court erred by finding the rebate schemes constitutional.
The nonmembers next correctly contend the rebate schemes provide inadequate information about the basis of the fee. The Chicago Teachers court listed several procedural safeguards which ensure nonmembers will receive adequate information prior *718 or to the collection of the fair share fee, namely,
(1) the union has the burden of proving the proportion of political and ideological expenses to total expenses,
(2) the union may not require nonmembers to first object before they may receive information as to how the fair share fee was determined,
(3) the union's proportionate share figures for its major categories of expense must be (a) verified by an independent auditor, and (b) disclosed to all nonmembers,
(4) the disclosure must include an audited accounting of local union disbursements to affiliated state and national labor organizations for collective bargaining and administration expenses vis-a-vis expenditures for political and ideological purposes, and
(5) any challenges to the union's expenditures must be made known to the union.
Chicago Teachers, 106 S.Ct. at 1075-76. Adequate disclosure, however, does not mean absolute precision in the calculation of the charge to nonmembers is expected or required. Chicago Teachers, 106 S.Ct. at 1076, n. 21. Thus, for instance, the union cannot be faulted for calculating its fee based on expenses during the prior year. Id.
The rebate plans here involved do not pass constitutional muster because the nonmembers (a) did not receive the required fair share fee calculations prior to the time the unions sought to collect them, and (b) had to first object in order to receive that information.
The unions, recognizing Chicago Teachers as binding precedent here, nevertheless contend the procedural safeguards there announced become operative only after the fair share fee has been independently determined. Such safeguards apply after such fee's collection but not before, they claim. We disagree.
While decisions of the United States Courts of Appeal do not bind the Indiana Court of Appeals, they are acceptable as guides and we give them due consideration. Penwell v. Western & Southern Life Ins., Co. (1985), Ind. App., 474 N.E.2d 1042, 1044.
The First Amendment demands the presence of a constitutionally adequate plan before a nonmember incurs any obligation to pay fees pursuant to a collective bargaining agreement. Tierney v. City of Toledo, (6th Cir.1987), 824 F.2d 1497, 1502. The First Amendment further requires the unions to provide nonmembers with an "advance reduction of dues", that is, the unions must deduct from the dues charged to union members the costs of the unions' political and ideological activities unconnected with the costs of collective bargaining and contract administration before they may collect the sum remaining, i.e., the fair share fee, from nonmembers. Cf. Damiano v. Matish (6th Cir.1987), 830 F.2d 1363, 1367.[3] Thus, this contention fails.
Nonmembers next contend the unions' rebate schemes do not provide for a reasonably prompt decision by an impartial decision maker. We agree.
Procedures to appeal the basis of the fee must not be excessively complex, Tierney, 824 F.2d at 1503, and disputes concerning the basis of the fair share fee assessment must be resolved expeditiously to avoid constitutional infirmity. Chicago Teachers, 106 S.Ct. at 1076. Ordinary judicial remedies are not expeditious but extraordinarily swift state judicial review would satisfy the expeditious requirement. Chicago Teachers, 106 S.Ct. at 1076-1077. A less burdensome method for appeal of *719 the fee basis would be expeditious arbitration. Id, at n. 21. Objections to the fee basis must be addressed in a fair and objective manner. Selection of an arbitrator must not represent the unrestricted choice of the union. Chicago Teachers, 106 S.Ct. at 1076, and n. 21.
In this case, a nonmember was unable to object until one year after his initial payment of dues. Several steps were then required before the nonmember could submit the question to arbitration. Such procedure is not reasonably prompt within the meaning of Chicago Teachers. For those reasons, the rebate plans here at issue unconstitutionally impinge upon the nonmembers' First Amendment rights.
The nonmembers next contend we should overrule prior decisions which approve a dues less a pro rata share of nonassessable expenses method of calculation. We disagree. We are bound by prior decisions approving this calculation. Ellis v. Railway Clerks (1984), 466 U.S. 435, 441, 104 S.Ct. 1883, 1889-90, 80 L.Ed.2d 426, 439; Brotherhood of Railway and Steamship Clerks v. Allen (1963), 373 U.S. 113, 121, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235, 241; International Ass'n of Machinists v. Street (1961), 367 U.S. 740, 774-775, 81 S.Ct. 1784, 1803, 6 L.Ed.2d 1141, 1164.
Finally, the nonmembers ask us to reject the method of calculating assessable expenses which we adopted in New Prairie Classroom Teachers v. Stewart (1986), Ind. App., 487 N.E.2d 1324, 1328. The test was set forth in Ellis, supra, 466 U.S. at 448, 104 S.Ct. at 1892, 80 L.Ed.2d at 442. Again, we are bound by such authority, and decline to do so.
Although nonmembers' First Amendment rights have been violated, the judgments against them should stand. Nonmembers have paid nothing to the unions as fair share fees for the 1983-84 and 1984-85 school years. As noted above the unions are entitled to be paid those fees. Thus, although nonmembers have not received advance estimates of fair share fees for those school years as constitutionally required, they in fact have received calculations of those fees subsequent to the time they were constitutionally required which were based on the unions' actual expenditures for political and ideological purposes, not upon reasonable estimates of future union expenses therefor. Nonmembers' fair share fees for those years have been accurately determined and form the basis for the trial court's judgments against nonmembers. While the trial court erred as to violation of nonmembers' First Amendment rights, such error is harmless. The merits have been fairly tried as to the amounts nonmembers owe the unions as fair share fees. The trial court's judgments against nonmembers are affirmed.[4]
The trial court, however, committed reversible error by denying nonmembers a hearing on their 42 U.S.C. § 1983 counterclaims. Clearly, the unions have breached nonmembers' First Amendment rights as above-discussed. They are entitled to a hearing and determination of their 42 U.S.C. § 1983 counterclaims.
Affirmed in part, as to the judgments, reversed and remanded for further proceedings consistent with this opinion as to nonmembers' 42 U.S.C. § 1983 counterclaims.
MILLER, J., concurs.
RATLIFF, C.J., concurs with separate opinion.
*720 RATLIFF, Chief Judge, concurring.
I concur completely in that part of the majority opinion affirming the judgments entered against appellants.
I also concur in the reversal in part to consider appellants' 42 U.S.C. § 1983 counterclaims. However, in this latter regard, attention should be directed to the opinion of the Supreme Court of the United States in Memphis Community School District v. Stachura (1986), 477 U.S. 299, 307, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249, 259, holding that no compensatory damages could be awarded for violation of the right to due process of law absent proof of actual injury, citing its decision in Carey v. Piphus (1978), 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252. Thus, the abstract value of the constitutional right may not form the basis for § 1983 damages. Stachura, 477 U.S. at 308, 106 S.Ct. at 2544, 91 L.Ed.2d at 259. Violation of first amendment rights likewise would confer no right to damages absent proof of actual damage, although nominal damages might be appropriate. Stachura, 477 U.S. at 308, fn. 11, 106 S.Ct. at 2544, fn. 11, 91 L.Ed.2d at 260, fn. 11.
Thus, I concur in the remand to hear and determine appellants' § 1983 counterclaims within the limitations imposed by Stachura and Carey.
NOTES
[1] "Nonmember" refers to teachers who belong to the bargaining unit but have chosen not to join the teachers unions which are the exclusive bargaining agents for the teachers of the school districts involved.
[2] Expenses are assessable to nonmembers only if they are related to collective bargaining and contract administration. Abels v. Monroe County Educ. Ass'n. (1986), Ind. App., 489 N.E.2d 533, 539.
[3] In defining advance reduction of dues, the Damiano court stated:

Under the "advanced reduction of dues" method, the collective bargaining unit would impose upon objecting non-union members an agency fee less than the fee assessed against union members as union dues. This agency fee would be calculated upon a projected forecast of the proportionate share of collected agency fees allocated to costs related to collective bargaining. For example, if 85% of union dues were traditionally expended on collective bargaining expenses, a union employing the advanced reduction of dues method would charge non-union employees an agency shop fee representing 85% of union dues.
Damiano, 830 F.2d at 1367, note 5.
[4] T.R. 61 states:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
A.R. 15(E) reads, in part:
... nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below.